TOBIAS v. THE A. H. WHITE CO., LTD.

(December 16th, 1929. Opinion and Decree.)

Cross and Moyse and Feitel and Feitel of New Orleans, attorneys for plaintiff, appellee.

Cahn and Cahn of New Orleans, attorneys for defendants, appellants.

JANVIER, J. Plaintiff, Mrs. Tobias, sues the A. H. White Co., Ltd., for the cost of replacing a roof which that company, as sub-contractors, had placed upon a building which was being erected for her by Heartfield & Heartfield, general contractors.

Very soon after the completion of the building it became apparent that water was entering the premises and, on investigation, Mrs. Tobias came to the conclusion that the roof was defective both in material and workmanship. She thereupon called upon The White Company to repair the roof and, after waiting a short time without receiving satisfaction from them, replaced the roof herself and now sues for the cost of the new one. She bases her suit on the ten-year guarantee which had been executed by The White Company at the time of the completion of their sub-contract. Defendants admit that they constructed the roof, but contend that the guaranty was given to the general contractors, Heartfield & Heartfield, and not to Mrs. Tobias, the owner, and they also claim that the water entered t h e building not as a result of defective material or workmanship in the roof, but solely because of structural defects in the building itself. They also claim that, since they received only $456.75 on their contract, which called for a total payment of $1,087.00, there has been a failure of consideration, or want of consideration, and that therefore, since the consideration for which the guarantee was given was not received, they are not bound under it.

It appears to us proper to first consider the question of fact involved. That is, whether the roof was defective. Because, if the water entered the building not as the result of a bad roof, but because of structural defects in the building, or if the structural defects in the building made it impossible for the roof to function properly, the roofing contractors are not liable.

Both the architect and a roofing expert from the City of Baton Rouge, Louisiana, where the buildings were located, testified that the trouble came about entirely because of a defective roof; that the laps of the roof material did not stick together and that the edges along the parapets were not properly flashed. These edges, according to the specifications, should have been turned up for several inches and cemented to the parapets, and an additional strip of flashing should have been placed over these edges. It is evident from the record this was not done. Defendants contend that the edges had been originally properly turned up against the parapets, but had been pulled away by the sagging in the other portion of the roof. We are quite convinced that this was not the case, as the sag in the roof was only about six inches at most and, though it is true that a straight line is the shortest distance between two points, a sag of six inches at or near the middle section of a roof the size of the one in question could not have caused the edges to pull away from the parapets enough to be noticed, if at all. Roofing material such as that used will certainly stretch enough to allow for a sag of only a few inches. Of course, if the sagging had taken place near the edges or para-

pets, it might well be that, as a result thereof, the flashing would have been torn loose, but the only depressions or sags in the roof were located a considerable distance from the edges.

The testimony shows that the laps failed to stick together and that it was between these laps that water entered. This defect was plainly the result either of defective roofing material, or of improper workmanship. The best proof of the fact that the leaks resulted from improper roofing, and not from structural defects, is the evidence that the new roof was laid over the same structure without any changes therein, and that it proved watertight. We are, therefore, well convinced that the original roof was defective.

But, says The White Company, Mrs. Tobias cannot claim any right under the guaranty because it was not given to her, but to Heartfield & Heartfield, her general contractors, who are the only persons who can take advantage of the guarantee.

We do not feel that the principle of law contended for by defendants, that only he in whose favor a bond or guarantee of surety runs can sue thereon, is applicable here. This guarantee was rather a warranty running with the building itself and enforceable by the owner of the building.

It should be remembered that the guarantee was not addressed to any particular person, but read as follows:

"We hereby guarantee Composition Roof on main roof and awning Tobias Bldg., Main St. Bet. L. R. & N. R. R. and Fufrocq St., Baton Rouge, La., installed by us for the period of Ten years, in which we agree to repair any leaks which may occur in our work which are due to rotting or wearing away of material and for Ten years which may be due to improper workmanship.***"

"[Signed] A. H. White Roofing Co.,
"By V. L. Grosbeck, Mgr."

In this regard the following quotation from 1 A. L. R. at page 861 is interesting and pertinent:

"While there is a seeming conflict among the decisions as to who may enforce a contract of guaranty, it appears from an examination of the cases that this conflict arises more from the application of well-accepted principles to the facts of given cases than from any disagreement as to the rules of law governing such contracts. Thus, it is generally agreed that those for whose benefit the guaranty was intended may enforce it, and that a person who is only incidentally benefited by the guaranty has no right of action thereon. The difficulty arises over the determination of the fact as to whom it was intended to benefit by a particular guaranty. Where the guaranty is general in its terms, and addressed to no particular person, it is uniformly held that anyone acting on it may enforce it."

But whether originally, and without any other action on the part of the general contractors, Mrs. Tobias could have proceeded against them directly, it is very evident that the estoppel which has been pleaded against The White Company, to the effect that they cannot set up such a defense against Mrs. Tobias, is quite sound. This estoppel results from the testimony of Mr. White, president of defendant company, that, although his company had not been paid the full contract price, nevertheless it issued the guarantee in order that the general contractors, Heartfield & Heartfield, might obtain from Mrs. Tobias further payments on the general contract. Mr. White's testimony on this point is as follows:

"Well, I will say this, from my own knowledge, the guarantee was issued with the understanding that these parties were permitted to use that guarantee in order to get their payments, that it was helping him to get their payments."

\* \* \*

"The guarantee was necessary in order

that they (the contractors) could get a settlement."

If Mrs. Tobias refused to make payments until the guarantee was issued, and if The White Company issued the guarantee for the purpose of prevailing upon her to make the further payments, it does not lie in their mouths now to say that Mrs. Tobias has no right to rely on that guarantee.

Furthermore, the evidence shows that when the defect was first discovered complaint was made by Mrs. Tobias, or her representative, direct to The White Company and not through the general contractors. The White Company, in response to that complaint, did not take the position that Mrs. Tobias must complain to the general contractors, but sent to Baton Rouge to investigate the complaint.

Defendants contend that the guarantee, even if Mrs. Tobias had a direct right of action under it, was in the nature of a stipulation "pour autrui," and that, therefore, the third person in whose favor it was made can have no greater rights than the person who made the stipulation, and that, since the failure or partial failure of consideration could have been set up against Heartfield & Heartfield, it can now be set up against Mrs. Tobias. This argument overlooks the same fact to which we have already referred, namely, that the stipulation was made or given for the purpose of persuading the third party, in whose favor it was made, to do something, i. e., to pay money, that that third party would not otherwise have done. We fail to see how the party who made the stipulation, under such circumstances and such purpose, can now be heard to complain. The White Company does not contend that Mrs. Tobias had not paid everything that she was obligated to pay under the contract, but merely that they did not receive their portion of what she paid to the general contractors. When they, by their action, induced her to pay to the general contractors the balance due—and we assume that the entire balance has been paid—they in effect agreed to look to the general contractors and their bondsman for payment. If they did not get their payment, Mrs. Tobias was in no way to blame. If they chose to waive or abandon their legal rights and their statutory remedies, they cannot now be heard to complain so far as she is concerned.

We cannot agree with counsel for plaintiff that The White Company should have tendered back to Mrs. Tobias the amount which they had received on account before they could claim that the consideration for their guarantee had failed, and that thus the contract was cancelled and they were released from the obligations of the guarantee. The cases to which our attention has been directed refer to contracts of sale where a portion of the contract price has not been paid, and in those cases the courts have held that that portion which has been paid must be tendered back before the cancellation of the contract can be claimed. But here the things sold, to-wit, the materials and labor which had been put into the roof, could never be handed back, and therefore, since the parties could not be put back into their original situations, the cases that counsel cite do not seem to be applicable.

But so far as Mrs. Tobias is concerned, full and complete consideration was given for the guarantee. True, it was not given to The White Company, but it was by the action of The White Company given to Heartfield & Heartfield, and if The White Company did not protect themselves, that is their own misfortune.

The record convinces us that the new roof, was placed, upon the building at a reasonable cost and that Mrs. Tobias has complied with all of her obligations in regard to the installation thereof, and, for the reasons we have given, we feel that the judgment of the lower court in awarding her the amount which she was called upon to spend is correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed.